## Hornick et al. *v.* Bethlehem Mines Corp., Appellant.

Argued March 21, 1932. Before FRAZER, C. J., SIMP-
SON, KEPHART, MAXEY, DREW and LINN, JJ.

*J. C. Davies,* for appellant.—In order to hold a coal
operator liable for failure of springs, it is not sufficient
to show merely the facts that coal has been mined and
springs have failed without establishing some causal
connection between the two events, at least where it ap-

pears that such springs have failed only during dry seasons and that it is equally probable that such failure was caused by drought: Weaver v. Mining Co., 216 Pa. 195; Alwine v. Coal Co., 271 Pa. 571; Mardo v. Coal Co., 279 Pa. 209; Huey v. Gahlenbeck, 121 Pa. 238; Kelenski v. Mfg. Co., 253 Pa. 77; P. R. R. v. Mackinney, 124 Pa. 462; Lyttle v. Denny, 222 Pa. 395; Forte v. Markle Co., 258 Pa. 194; Sandt v. Foundry Co., 214 Pa. 215; Price v. R. R., 202 Pa. 176.

Particularly will the jury not be permitted to infer liability on a defendant when it is at least equally probable that the injury complained of resulted from some other cause: Ribblett v. Steel Co., 251 Pa. 253; Miller v. R. R., 270 Pa. 330; Anderson v. Baxter, 285 Pa. 443; Gausman v. Pearson Co., 284 Pa. 348; Dangelo v. R. R., 301 Pa. 579; Erb v. Traction Co., 256 Pa. 567; Laven v. Moore, 211 Pa. 245; Long v. Frock, 304 Pa. 355; Venzel v. Coal Co., 304 Pa. 583.

In all previous cases of this nature where a coal operator has been held liable for loss of springs, the causal connection has been shown by proof of actual cracks, breaks, subsidence and other disturbances on the surface of the land: Hoffman v. Mining Co., 265 Pa. 476; Coleman v. Chadwick, 80 Pa. 81; Kistler v. Thompson, 158 Pa. 139; Berkey v. Mining Co., 220 Pa. 65.

In the absence of cracks or breaks on the surface and in the intermediate mine or other tangible evidence that the mining of the coal was responsible for the loss of the springs, the speculative opinions of plaintiffs' experts that the mining caused the injury were valueless and insufficient to carry the case to the jury, when they also admitted that the drought might have been the cause: Pitts. Gas Engine Co. v. Mfg. Co., 43 Pa. Superior Ct. 485; Collins v. Mechling, 1 Pa. Superior Ct. 594; Zeigler v. Foundation Co., 228 Pa. 64; Brown v. Corey & Peterson, 43 Pa. 495; Snyder's Est., 279 Pa. 63; Johnson v. Turnbull, 130 Fed. 769; Haskins v. R. R., 293 Pa.

537; Seiwell v. Hines, 273 Pa. 259; Folger v. Ry., 291 Pa. 205.

*Frank P. Barnhart*, with him *Samuel Di Francesco*, for appellee.—The evidence is sufficient to sustain a finding that the drying of the springs was caused by removal of surface support: Weaver v. Collins, 79 Pa. Superior Ct. 289; Alwine v. Coal Co., 271 Pa. 571; Weaver v. Coal Co., 216 Pa. 195.

Where a party fails to produce evidence which is within his possession or control, the jury has a right to infer that such evidence, if produced, would be unfavorable to him: Bryant v. Stilwell, 24 Pa. 314; McHugh v. McHugh, 186 Pa. 197; Hoffman v. Coal Co., 265 Pa. 476.

OPINION BY MR. JUSTICE MAXEY, April 11, 1932:

Plaintiffs' claim was based on the alleged drying up of springs of water on their farm of 154 acres. Plaintiffs contended that these springs became permanently dry because of the mining and removal of coal by the defendant underneath this farm. The defendant had the right to mine and remove this coal but was liable for any damages that mining did to the surface. Beneath plaintiffs' farm were two seams of coal, the "B" and the "C" seams. The "B" seam lies approximately 500 feet below the surface and the "C" seam approximately 400 feet. In 1925 the defendant began taking out pillars in the "B" seam of coal underneath plaintiffs' farm and approximately one-half of the pillar coal underlying plaintiffs' land had been removed prior to the time of trial. A small portion of the "C" seam had also been removed from under the end of plaintiffs' property remote from the springs. The first mining in this seam had progressed to a point directly under the springs. The springs of water which the plaintiffs had formerly had on this farm were used to supply the occupants of the buildings thereon with water, for all domestic purposes as well as for horses, cattle and other live stock and for

agricultural uses. Plaintiff described these springs as "never failing, except in very dry seasons," until the commission of the acts herein complained of. The question at issue was whether or not the loss of water in the springs was due to the defendant's mining operations or to other causes.

It was the contention of the defendant that the plaintiffs failed to sustain the burden of proof by establishing any causal connection between the drying up of the springs and defendant's mining operations.

The plaintiffs called as one of their witnesses the defendant's chief engineer who had charge of these mining operations. He produced photostat copies of a map which contained the dates the pillars were removed under various parts of the farm. These maps show that the main heading of the "B" seam was begun in 1922 and completed in 1926. There were seven right cross headings operated under the plaintiffs' farm between 1922 and 1927 and five left cross headings operated under plaintiffs' farm between 1923 and 1926. The taking out of pillars began in September, 1925, and continued until December, 1930. Pillars were taken out under "A" spring by June, 1927, under "B" spring by September, 1928, under "C" spring by June, 1930, and under "D" spring by September, 1930. Pillars were removed from under the farmhouse in December, 1928. The engineer testified that the drawing out of these pillars caused a fall of the roof of the mine at or subsequent to the pillar removal. The testimony as to the drying up of the springs is as follows: "A" spring began to fail in June or July, 1927, after that there was water in it only during extremely wet seasons. This spring was never as strong as before 1927. "B" spring began to dry up in the summer of 1928 and the water in it was never afterwards sufficient for domestic use. "C" and "D" springs began to dry up about July, 1930, and in November of that year they became entirely dry.

Plaintiffs offered testimony showing cracks in the walls and the concrete cellar floor of the house situated on the farm. These were first noticed in the spring or summer of 1930. Blasting was heard under the farmhouse in 1928 and 1929. None was heard there in 1927. The blasting done in 1929 and 1930 shook the house and the slates on the roof became loosened. One witness described this blasting as so severe "that it shook the whole house; it rattled the dishes in the cupboards." Sometimes this blasting was heard two or three times a week and at other times it was heard once or twice daily.

A civil and mining engineer called by the plaintiffs testified that in his opinion the loss of water in plaintiffs' springs was caused by the mining of the coal in removing the pillars in the "B" seam beneath these springs. This witness testified that pillars had been drawn under spring "A" close to a point directly below spring "C." This same witness also declared that "nobody but God Almighty knows what dried the springs." Another civil and mining engineer testified that he thought the water in the springs was lost by the mining of the coal and especially in "pulling the pillars" in the "B" seam coal underneath plaintiffs' farm. He declared that as a result of his examination of the premises and of the mines beneath, he believed the mining by the defendant resulted in "a general shattering of the overlying strata." He also stated, "It doesn't take very much shattered area to take water away from water bearing strata."

The issues were presented to the jury and a verdict was returned in favor of the plaintiffs for $12,000. This was subsequently reduced to $10,000, which reduction plaintiffs accepted.

In this case the proof of the cause of action depended entirely upon circumstantial evidence. Whether or not the plaintiffs' springs were dried by the mining operations of the defendant is entirely a matter of inference. It is easy to express the distinction between conjecture

and absolute proof but it is not easy to formulate a definition which in every situation will distinguish conjecture from legal proof with the certainty with which accredited chemical reagents perform their functions. If the administration of justice had to depend on demonstration by absolute proof, there would be few issues open to litigation, for such proof is rarely obtainable outside the realm of science. When a finding is a reasonable inference from the facts and conditions directly proved, it must be classed as legal evidence and not as a mere conjecture, surmise or guess. In Gray v. Com., 101 Pa. 380, Justice PAXSON said: "We are not jurors and are not called upon to weigh the evidence......further than to say......whether there is sufficient evidence to submit to the jury upon a particular question of fact." Wigmore says, in the second edition of his Evidence, volume 1, section 27, page 232, "The conclusions and tests of everyday experience must constantly control the standards of legal logic."

While the case before us is a rather close one, we think that according to the tests of everyday experience the court was justified in submitting to the jury the question whether or not the drying up of plaintiffs' springs was caused by the defendant's mining operations. The verdict in this case was based on an inference fairly deduced from legal evidence.

In Weaver v. Berwind-White Coal Co., 216 Pa. 195, 204, this court said: "If there had been no subsidence of the surface, no disturbance of the superincumbent strata by reason of the mining and removal of all the coal underlying the same; or if it appeared as a fact that the springs were not destroyed by reason of the failure to provide surface support, there could be no recovery." We interpret the first two phrases quoted as being practically in the alternative, i. e., as if there was neither a subsidence of the surface nor disturbance of the superincumbent strata by reason of the removal of all the underlying coal, there would not be sufficient

facts to warrant the inference of a causal connection between the removal of all the coal and the drying up of the springs above the voids thus created. In the case before us the defendant had the right to remove the pillars as long as this removal did not involve disturbance of the surface. Disturbance of the surface is not limited to surface subsidence. There may be serious disturbance of the surface without actual subsidence. Large fissures in the surface of the ground amount to a serious disturbance of the surface, yet they do not necessarily involve a surface subsidence. For example, there may be cracks in the top story of a high building due to some interference with the foundation and yet the building itself may not subside a visible particle. The principle laid down in the case above cited means that in order to establish a causal connection between what is known as "pillar robbing" and the drying up of surface springs above the resulting voids, there must be some evidence that the effects of the former reached the surface. In the case before us such evidence is found in the testimony that the mining and blasting below the surface was followed by cracks in the walls and concrete floor of the plaintiffs' farmhouse, the rattling of dishes in the cupboards and the loosening of slate shingles on the roof. This constituted evidence that the defendant's mining had physical surface repercussions. These facts furnish as substantial proof that the surface was affected by the "pillar robbing" below as a mere subsidence of the surface a few inches would have done. If the mining of the pillars had the physical surface effects testified to, it is a legitimate inference that the cause of these effects was likewise the cause of the drying up of the springs. In fact a subterranean disturbance resulting in a slight and uniform subsidence of the surface without other effects thereon would probably have had less effect on surface springs of water than the subterranean disturbance which resulted in the phenomena testified to.

Circumstantial evidence is legal evidence: Com. v. Harman, 4 Pa. 269, 273. We think plaintiffs furnished sufficient legal evidence connecting defendant's pillar mining with the drying up of plaintiffs' springs to warrant the submission of the case to the jury. See Alwine v. Valley Smokeless Coal Co., 271 Pa. 571.

The judgment is affirmed.