## Fordson Coal Company v. Whitt et al.

(Decided March 20, 1934.)

HARMAN, FRANCIS & HOBSON for appellant.
E. J. PICKLESIMER for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

Arminta Whitt, Marie Whitt, and Leatha Whitt were the owners of 55 acres of land on Hurricane fork of Pond creek, Pike county, Ky. Their title was subject to the title of the Fordson Coal Company to "all the coal, gases, salt water, oil and minerals of every description in, upon and under" the 55 acres; also to the "full and complete rights and privileges of every kind for mining the coal, * * * on, through and over the

land," and "in particular the right of exploring for and extracting the said minerals." The title to the coal and other minerals and the rights listed above were owned under a perfect paper title by the Fordson Coal Company. In the exercise of its ownership, the Fordson Coal Company entered upon the 55 acres and mined the coal thereunder. The Whitts, in their petition as amended, charge that the Fordson Coal Company "wrongfully robbed the pillars and natural support from under the surface" of the 55 acres, "to such an extent that it caused the surface at different and divers places" to sink, break, and crack; and that it removed the pillars and natural support from under the surface where their "house was located and caused the surface to sink and one corner of" the "house give down and large cracks in the surface to break in the yard and under the foundation, and thereby endangered the safety" of "their lives in residing in their home." They also charge the land was mined so near the surface as to destroy the water in a well used at their home, and "in robbing the pillars from under the surface it practically destroyed the land for the purpose of cultivation, or for the purpose of being used as a home."

To avert liability the Fordson Coal Company traversed the petition as amended, relied on the provisions in the deed conveying a title in fee to the coal and rights thereto. On issues formed the cause was submitted to a jury on the evidence offered by the parties. It returned a verdict in favor of the Whitts of $1,200.

We are confronted with a disputed construction of the deed vesting title to the coal in the Fordson Coal Company. The Whitts insist, as owners of the surface, their right to have the surface maintained in its natural state free from subsidence, or parting of the soil from mining directly thereunder is absolute, to which the right of the Fordson Coal Company, under its deed, is subservient. They rely on West Ky. Coal Co. v. Dilback, 219 Ky. 783, 294 S. W. 478; H. B. Jones Coal Co. v. Mays, 225 Ky. 365, 8 S. W. (2d) 626; Kenmont Coal Co. v. Hall, 239 Ky. 691, 40 S. W. (2d) 301, as authority for the proper construction of the deed of the Fordson Coal Company. The Fordson Coal Company contends a proper reading of the deed vests in it the absolute title to the coal with an unlimited, unrestrained right to enter upon the land and extract and remove all coal thereunder without regard to the effect of so doing on

the surface. The Fordson Coal Company argues that the meaning of the language of its deed is identical to the deeds construed in Griffin v. Fairmont Coal Co., 59 W. Va. 480, 53 S. E. 24, 2 L. R. A. (N. S.) 1115; Kuhn v. Fairmont Coal Co. (C. C. A.) 179 F. 191, 66 W. Va. 711; Cole v. Signal Knob Coal Co., 95 W. Va. 702, 122 S. E. 268, 35 A. L. R. 1134.

To correctly and properly dispose of the case, it is entirely unnecessary and not required of us to construe the deed of the Fordson Coal Company in accordance with the construction contended for by either party, since the judgment must be reversed on other grounds.

The Whitts base their action entirely on the removal of, or on robbing, the pillars and natural support under the surface where the residence was located, near the well, and from under the surface of about six acres, practically destroying same for the purpose of cultivation and use as a home. A diligent examination of the evidence discloses a failure of proof sustaining these allegations.

The evidence in behalf of the Whitts is that, while the mining was going on, blasts and the sound of the machinery used in mining could be heard from the residence, the highway, and other points. It is shown, about 10 years before the trial of the action the soil parted in the rear of the residence next to the hill, and since that time about 6 acres between the residence and the hill had broken up, cracked, and subsided to such an extent the surface was practically destroyed. Also one corner of the residence had settled or lowered several inches and the well had gone dry and was useless. It was shown by two or more ex-employees of the Fordson Coal Company, they had engaged in pulling pillars under the land of the Whitts, "practically everywhere"; the mine was wet; "they used a pump with an 8-inch pipe line to take" the water out; and when the pillars were pulled a space from four to five feet was created, and this caused the overhead to fall and the surface to break. These employees express the opinion, "after the pillars are gone the dirt is bound to fall," "break up," "drop down," "or fall." They testified, since the pillars were pulled, the 6 acres had broken to pieces, in "lots of places it broke," and opened so a good-sized house could be put down in the cracks.

For the Fordson Coal Company a map was pre-

sented showing the territory mined and from which the pillars had been removed as well as that portion from which they had not been removed. It shows that, under the 6 acres which had been destroyed by the breaks and cracks of the surface as they are described by the witnesses, the pillars thereunder, except a few, had not been removed, but were yet intact and no coal had been mined under the residence and kitchen occupied by the Whitts, nor under the well.

It is shown without contradiction that a large crack which the evidence for the Whitts shows existed 10 years before the trial of the action, and before the mining had been done under the Whitt land. It is the theory of the Fordson Coal Company the injury to the 6 acres, for which the Whitts sue, and about which the witnesses in their behalf testify, was caused by a "slip" or "slide," and that it occurred independent of the mining operations. The fact the large 10 year old crack in the surface occurred before the commencing of the mining operations corroborates the theory of the Fordson Coal Company. Neighbors of the Whitts testify to the existence of the "slip" or "slide" or break that appeared between the hill and the 6 destroyed acres, prior to the mining of coal under the Whitt land. One of their neighbors occupying an adjoining or near tract, which he owned, described a "slip" or "slide" on his land under which no mining had been done, producing the same appearance and condition on the surface as those of the 6 destroyed acres on the Whitt land. The evidence showing no coal was mined from under the residence and kitchen was uncontradicted, nor were the witnesses testifying relative thereto impeached or discredited. Engineers and others entered the mine under the destroyed 6 acres shortly before they testified, and they declare there was no cave-in, or sinking from above, of the rock or soil, immediately under the destroyed acres. A map showing the interior of the mine, the description thereof by the witnesses who had recently entered it and observed the condition immediately beneath the 6 acres, the occurring of like or similar "slips" or "slides" on the nearby land producing a condition of the surface like that of the Whitt land and the appearance of the break between the hill and the residence before the commencement of the mining operations, are not disputed or contradicted, except inferentially by the testimony in behalf of the Whitts. There

was no evidence offered to contradict or as tending to contradict the testimony in behalf of Fordson Coal Company other than the statements of Mrs. Whitt, and others, they had heard the roar of machinery and the sound of the blasts while the mining was being done, and the statements of the ex-employees they had drawn pillars from under the surface of a portion of the 55 acres.

Giving full weight to the testimony in behalf of the Whitts and all reasonable inferences deducible therefrom, it leaves uncontradicted the evidence of the Fordson Coal Company showing the interior of the mine beneath the 6 acres, for the destruction of which damages are sought, intact and unaffected by the condition appearing on the surface. The testimony showing no coal was mined under the residence and other buildings was neither denied nor disputed. Ball v. Fordson Coal Co., 250 Ky. 663, 63 S. W. (2d) 805. The circuit court eliminated from the case the water well. No question is raised on the appeal as to the action of the court in so doing.

With the evidence showing two theories as the proximate cause of the damages for which the Whitts sue, it is not doubtful the Fordson Coal Company was entitled to a directed verdict; also on the ground of failure of proof showing the coal had been removed from under the buildings and no cave-in of the overhead in the mines under the 6 acres. Damages recoverable in every case must be shown with a reasonable certainty, not only as to their nature and extent, but as to the cause from which they proceed. Kress & Co. v. Sharp, 156 Miss. 693, 126 So. 650, 68 A. L. R. 167. Conjecture and speculation as to the proximate cause of damages sought must not be indulged in. Kentucky Glycerine Co. v. Woodruff Development Co., 233 Ky. 325, 25 S. W. (2d) 736; Kidd v. Modern Amusement Co., Inc., 252 Ky. 386, 67 S. W. (2d) 466. Where the evidence is equally consistent with one of two states of cases upon which one may theorize as to the cause of damages, it is not competent for the court to leave the matter to the jury. See Chesapeake & O. Ry. Co. v. Bagby, 155 Ky. 420, 159 S. W. 964; Kidd v. Modern Amusement Co., supra. Applying these principles to the developed facts, the coal company was entitled to a directed verdict.

All other questions reserved. The judgment is reversed for proceedings consistent with this opinion.