## Bogar v. Fordson Coal Co.

June 21, 1940.

R. Monroe Fields, Judge.

Frank W. Stowers for appellant.

Harman, Francis & Hobson for appellee.

Opinion of the Court by Judge Tilford—Affirming.

This is an appeal from a judgment dismissing appellant's petition entered pursuant to a verdict rendered under peremptory instructions from the trial court at the conclusion of all the testimony. The correctness of this ruling is the subject of this review.

The appellant owns a portion of the surface of a tract of land containing 890 acres, the minerals under which were conveyed to appellee's predecessor in title by appellant's predecessor in title on June 27, 1889. The deed conveying the minerals, after vesting the grantee with title to "all the coal, gases, salt, water, oil, and minerals of every description in, upon, and under" the land, conferred upon the grantee the right to extract and transport them, and we are urged by the appellee to construe this deed as vesting the appellee with the right to remove "all" the coal, regardless of the consequences to the surface, and hence, as barring the appellant from maintaining this action to recover damages for the subsidence of portions of the surface and the destruction of her well. Appellee further urges that since the appellant in her petition alleges that the injuries to her surface tract had been occasioned by negligence on the part of appellee in mining thereunder, and no negligence was shown, the appellee was entitled to a peremptory instruction on this ground. However, since the trial court apparently based its ruling solely upon the failure of appellant to prove that the subsidence of the surface or injury to the well was caused by the appellee's mining operations, whether negligent or otherwise, and we are of the opinion that the evidence was insufficient to support a verdict for appellant had the case been submitted to the jury, it is unnecessary for us to construe the deed or consider the allegation of negligence.

The evidence for the appellant established that numerous cracks or breaks had appeared in the surface owned by her after appellee had begun mining operations thereunder, and that a theretofore unfailing well situated near her residence had become polluted and thereafter completely dry during certain seasons of the year. It also established that water had developed in

the earthen floor of a hitherto dry barn, and that an area comprising about one square acre, under cultivation, had sunk to a depth ranging from a few inches to several feet. There was at least one other sizable subsidence, but, in view of the fact that there was practically no disagreement between the witnesses on the respective sides as to the condition of the surface or the well, it would serve no good purpose to attempt to describe them in detail. It is sufficient to say that the region was mountainous and the lands in question situated principally on hill sides, and that the real dispute between the parties was not as to the surface conditions existing before, or resulting after, appellee began mining under appellant's property, but as to the cause of these conditions. More than two years prior to the trial of this case the Circuit Court entered an order permitting the appellant and such witnesses experienced in mining matters as she might desire ''to enter as desired into the mines of the defendant in and about the land claimed by the plaintiff and to make such inspection and do such surveying, if any, as plaintiff may desire to have done.'' Notwithstanding the opportunity afforded by this order the appellant produced no evidence whatsoever indicating changes in the stratum above the mine roof, or in the roof itself or its supports. So far as the interior of the mine was concerned, she contented herself with introducing two miners who testified that explosives had been used; that there were one or more drips of cold water in some of the entries; and that occasionally slate had fallen from the roof; but there was nothing in the testimony of these witnesses to even remotely indicate that the use of explosives or the falling of slate from the roof had in any manner damaged or weakened the support of the surface, or that the drips were so located as to indicate that the water came from appellant's well. Appellant offered to prove by one witness, but was refused permission by the court so to do, that the witness had overheard a conversation between an employee of the company and the company's engineer during which the engineer ''looked up at the spur over there the way the haul road come from the mine and said, 'there is where is our trouble in that slate fall up on that spur of the hill' ''. The appellant also proved that the appellee had drilled two holes from her surface to the mine, one of which was used for the piping of water from the mine and one for a power line, but failed to show that

the drilling of these openings had caused or contributed to the conditions complained of by her. Appellant's witnesses, none of whom was skilled in mining operations, testified that in their opinion the breaks or cracks were not ordinary mountain slides, but breaks caused by the mining operations underneath. Though slight, yet taken as a whole, the testimony offered by the appellant perhaps constitutes a scintilla of evidence, which prior to the decision in the case of Nugent et al. v. Nugent Ex'r, 281 Ky. 263, 135 S. W. (2d) 877, 879, would have required the court to submit the issue to the jury. We shall now briefly refer to the evidence introduced by the appellee, which, in our opinion, justified the trial court at the conclusion of all the evidence in directing a verdict in favor of the appellee.

The suit was instituted on July 21, 1934, prior and subsequent to which date appellee's engineer and other experts had made inspections of appellant's boundary and numerous surveys and examinations of all the excavations underneath. Exact measurements were taken and furnished in evidence showing the supports under the affected surfaces and the exact quantity of coal mined from the area underlying appellant's boundary. Numerous qualified witnesses testified that the stratum between the roof of the mine and the surface was entirely unaffected by the mining operations; that the roof of the mine was dry and in good condition; that the condition of the supporting timbers conclusively showed that the stratum above was intact and that no break had occurred; that the quantity of coal removed was not nearly sufficient to cause a subsidence of the surface, that the dripping referred to by the miners introduced by appellant were such as were universally found in coal mines and were so located with respect to appellant's well that they could not possibly have come from it; that slate falls are constant occurrences in mining that particular type of coal vein and have no effect upon the roof; that the general dry condition of the mine showed conclusively that there had been no breaks in the surface caused by the mining operations, as such breaks universally admit large quantities of water from the surface; and that the condition complained of on the surface had resulted from "slides" which had been common in the vicinity for several years past owing to weather conditions. This testimony is so voluminous

and exact in its detail that it would extend this opinion much beyond any reasonable length if we attempted to discuss it. It is sufficient to say that it completely established that the surface conditions testified to by appellant's witnesses did not result from the mining operations, and that the appellant did not attempt to refute it.

The same condition exists as to the testimony concerning the alleged injury to the well. Appellant's husband testified that it became polluted in 1930 or 1931 and went dry in 1932. The map introduced by appellee shows that in July, 1932, the mining operations were 125 feet from the well, measured laterally at the closest point, and that the left air course approaching the well was 290 feet from the well, measured longitudinally at the closest point. Some time after the well had gone dry the above-mentioned entries were extended, and at the time of the institution of the suit the left air course had been driven 4 feet horizontally from the well, slightly over 100 feet vertically, and had been driven under a part of the house. There had been no change in the condition of the water in the well since this entry was driven and the well itself is on a solid block of coal. It was shown that there had been no disturbances of any kind in the roof of the mine in the vicinity of the well or house, and that the bottom of the well was over 100 feet above the roof of the mine.

We might go on almost indefinitely with illustrations, such as that given in the preceding paragraph, of the evidence introduced by the appellee. Appellant complains that if the testimony of the appellee's engineers and experts is to be taken as conclusive, it will be impossible for surface owners to recover damages occasioned by mining operations beneath. However, several of the witnesses introduced by the appellee, were, as far as the record disclosed, wholly disinterested. Certainly they were qualified and their testimony has the ring of truth; but, be this as it may, the appellant was offered every opportunity to produce evidence as to the conditions in the mine so as to contradict this testimony, had contradiction been possible. It may be unfortunate that she did not avail herself of this opportunity, but this does not alter the fact that courts are not authorized to guess at the cause of conditions which occasion damages, or to disregard testimony because of the suspicion

that it may be biased. Supporting our conclusions are our opinions in the cases of Fordson Coal Company v. Whitt et al., 253 Ky. 484, 69 S. W. (2d) 992; Consolidation Coal Co. v. Ramey et al., 271 Ky. 48, 111 S. W. (2d) 438.

Judgment affirmed.