JOHN H. GABRIELSON et ux., Appellees, v. CENTRAL SERVICE
COMPANY, Appellant.

No. 45968.

OCTOBER 20, 1942.

Herrick, Sloan & Langdon, of Des Moines, for appellant.

H. M. Coggeshall, of Des Moines, for appellees.

HALE, J.— Plaintiffs, in their petition, allege injury by reason of the caving in of their land, alleging that this was caused by the defendant's removing coal under plaintiffs' real estate and from other adjoining property to the southwest and north and not leaving or providing sufficient support for the mine roof; that the cave-in caused the surface of the ground to subside and twist, and that as a result, plaintiffs' home and property were permanently damaged. In its answer defendant denies that it failed to leave or provide sufficient support for the roof of any mine owned or operated by it under plaintiffs' property, specifically denies that any failure to leave or provide sufficient support for the roof of any mine owned and operated by it under the property claimed by plaintiffs caused said mine to cave in, and specifically denies that any such cave-in caused the surface of the real estate occupied by plaintiffs to subside and twist or caused any damage. Defendant admits that it did operate its mine in 1940 and 1941 and removed coal from under the surface of properties near to that occupied by the plaintiffs, but specifically denies that any failure to leave or provide sufficient support for its mine roof under those near-by properties caused the surface of plaintiffs' ground to subside or twist or caused any damage whatever to plaintiffs, and alleges that this defendant is not liable in any manner whatsoever to plaintiffs for the damages claimed by them on account of the mining operations. It further states that, as to mining operations under the surrounding properties, no fault or blame is charged against this defendant which would make it liable to plaintiffs for damages in this case. It also generally denies every allegation in plaintiffs' petition not specifically admitted or specifically denied.

Millard A. Olmsted owned a 10-acre tract in the town of Urbandale, and his brother owned 10 acres immediately south. They platted the two tracts as "Olmsted Place." The premises in controversy are in the Millard A. Olmsted part of Olmsted Place. On October 24, 1939, said Millard A. Olmsted sold Lots 15 and 16, described as 3916 70th Street, to D. L. Leach, reserving the coal and coal rights. Plaintiffs thereafter purchased said tract on contract from Leach. Neighbors occupied other lots in the vicinity which had been purchased of Olmsted or his grantees. At the time plaintiffs bought the property, March 11, 1940, the story-and-a-half house of plaintiffs was under construction and not quite completed, and they moved into it the last week in March. Olmsted, the original owner, entered into a coal lease with the Central Service Company, defendant, with respect to the 10-acre tract, on June 10, 1940. At the time of the institution of this suit, some of the "rooms" in the mine had been mined out. The mine shaft was about 2,000 feet to the southwest of the 10-acre tract. Coal was removed from the rooms by a north-and-south cross-entry conveyor, lying between the tiers of coal rooms, which transported the coal south to the haulage way. The total amount of the Olmsted tract which had been mined by the defendant was about 35 per cent.

Plaintiff John H. Gabrielson testified to the injuries observed at his house on April 22, 1941, stating that the kitchen floor tipped to the west and north; there was a crack in the plastering in various parts of the house, which increased in length and width; that doors would not swing properly; that there were cracks in the corner of the frame house and foundation, large enough in some instances to admit the rain, and that the front and back steps pulled away from the house; that there were cracks in the concrete floor of the basement, as well as in the walk extending from the south. He also testified to other defects on the inside and outside of the home and in the garage. Mrs. Gabrielson also testified as to defects such as those described by her husband.

A neighbor, J. F. Tomascheski, discovered cracks in the floor and walls of his basement and the sidewalk. Another near-by neighbor discovered cracks in the concrete floor of the basement of her residence and other places in the house. Still other neigh-

bors were affected: E. A. Erskine, J. J. Ahern, J. W. LeVere, L. O. Graham, and others, all testifying to many of the same injuries to their properties as those described by the plaintiffs. These properties appear to have been directly over the mine. There was also testimony that there were cave-ins in the mine when examined by several persons on May 29, 1941, and there was further testimony as to subsidence of the Gabrielson property, which on July 26, 1941, was half an inch lower than about a month previously. While there was testimony of this nature, there was also some opinion testimony on cross-examination that the cave-ins in the mine never reached the surface.

It is not practicable or necessary to set out to any great extent all the testimony introduced, but the foregoing indicates the character of the evidence offered at the trial as to injuries to the property. At the conclusion of plaintiffs' testimony defendant moved for a directed verdict in its favor on the ground of insufficient proof for recovery, no pleading or proof of any negligence of the defendant which would warrant recovery for removal of lateral support of plaintiffs' house or property or recovery for damages claimed by plaintiffs, that no damage has resulted from any act or omission of the defendant, and that any verdict rendered for the plaintiffs would be without support in the evidence. This motion and renewed motion were overruled. No evidence was offered by defendant. After the verdict, defendant's motion for new trial and objections and exceptions to the court's instructions were also overruled, the motion for new trial being on much the same grounds as the motion for directed verdict.

I. The first assignment of error made by defendant was to the overruling of the major portion of the motion for directed verdict as incorporated in the renewal of motion for directed verdict, and as grounds therefor the defendant alleges that in order to recover damages to buildings, alleged to be due to subsidence of ground which was caused by defendant's failure to support its mine roof underneath, plaintiffs must prove defendant's failure to support the mine roof as alleged, and that such failure proximately caused subsidence of plaintiffs' ground and resulting damage. It is further alleged that where plain-

tiffs' testimony fails to show defendant's wrong and such proximate cause, and in fact affirmatively negatives these issues, there is no room for speculation, or conjecture, or presumption of causation, and a directed verdict for the defendant would be imperative. In argument defendant calls attention to the witnesses who went into the mines for the purpose of inspecting the cave-ins and challenges the meagerness of their testimony. It alleges they did not testify about the probable cause of the injuries to the property, or their probable or likely effects, or about the roof of the mine, or the pillars or supports of the mine, or about the strata above these so-called cave-ins, and between them and the surface of the ground 280 feet above. It appears from the evidence that these cave-ins blocked the way to the mined-out rooms.

Defendant cites Ball v. Fordson Coal Co., 250 Ky. 663, 63 S. W. 2d 805. The case is hardly in point since the plaintiff, according to the court's statement, affirmatively established that the subjacent support left by appellee was ample support for the surface of the cemetery. And the same is true of the case of Fordson Coal Co. v. Whitt, 253 Ky. 484, 69 S. W. 2d 992, as there was no direct evidence in favor of the plaintiff or that the mine had caused injury to the land, since there had been slips and slides entirely unconnected with the mine; and it was further shown by uncontradicted evidence that there was no cave-in, and testimony showing no coal was mined under the residence was neither denied nor disputed.

In Consolidation Coal Co. v. Ramey, 271 Ky. 48, 111 S. W. 2d 438, the plaintiff failed to establish a case, as there was nothing but the prima facie case of the mining and the supposed defect.

The case of Standard Oil Co. v. Watts, 7 Cir., Ill., 17 F. 2d 981, 982, also cited by the defendant, does not support its view. Defendant cites this case merely for the purpose of distinction and discussion. The question in that case was whether proof of mining and subsidence made a definite case of proximate causation between the two. The record showed that defendant's mining operations were followed by an undisputed subsidence of the surface of the ground, and the court held that since the

information to explain the situation would naturally lie in defendant's hands, it would regard these admitted facts as raising a prima facie case in the absence of other proof. Defendant, in attempting to distinguish the effect of this case, attempts to draw a distinction between the evidence in the two cases. We do not so read the evidence. The court, in the Standard Oil Company case, states:

"In the absence of evidence of any other cause, is it unreasonable to conclude that a subsidence of the surface, following the removal of subjacent coal, was caused by it? We believe the law of gravity requires a negative reply. It goes without saying that the removal of any part of subjacent support has some tendency to bring down what is above, and where it appears there has been such removal, notwithstanding it may also appear that supposedly sufficient support was left, a subsidence of what is above, not otherwise explained, may be assumed to have been thus caused."

Defendant's assertion that the testimony of the plaintiffs goes to the extent of proving affirmatively that the surface was not disturbed by the undisputed fact of there having been a cave-in at the mine, we do not think is borne out by the testimony of witnesses, which was at the most merely a conclusion. We think that the case discussed and attempted to be distinguished is against the contention of the defendant.

In Bogar v. Fordson Coal Co., 283 Ky. 594, 142 S. W. 2d 143, the evidence showed that numerous cracks had appeared in the surface after the appellee had begun operations thereunder, and the well had become dry at certain seasons of the year. No evidence whatsoever was introduced indicating changes in the stratum above the mine roof, in the roof itself, or its supports. There was nothing in the testimony to indicate that the use of explosives or the falling of slate from the roof had in any manner damaged or weakened the support of the surface. We are satisfied that none of the foregoing cases are such as under the evidence in this case would support the view of the defendant. We do not agree with defendant's contention that the plaintiffs failed to prove any subsidence of the surface of the ground as the

probable cause of the damages as claimed. Nor are we satisfied that they were so required to prove by direct evidence.

In Peters v. Bellingham Coal Mines, 173 Wash. 123, 127, 21 P. 2d 1024, 1026, the evidence disclosed that coal mining operations were carried on beneath the surface of plaintiff's land by the so-called ''room and pillar'' system; that the earth was honeycombed on levels from a depth of 225 feet to 450 feet below the surface, leaving rooms averaging about 20 feet in width, with pillars between averaging a little wider; and that about 45 per cent of coal and other supporting material was removed. The court held that in the absence of clear contractual waiver the owner's right to subjacent support for the surface is absolute, and also that persons who disturb subjacent support of the surface are absolutely liable, regardless of negligence in exercising alleged rights under the surface. The court said:

''The honeycombed condition of the earth left by the mining done by appellant under the surface of respondents' properties, as to which there is no substantial dispute, and the absence of any other probable cause of the subsidence, as the jury could well believe from the evidence, are decisive against this contention. There was ample and competent evidence to sustain a finding that the mining by appellant and the condition left by it as the result of such mining was the cause of the subsidence and the damage to all the properties of respondents.''

In Hornick v. Bethlehem Mines Corp., 307 Pa. 264, 161 A. 75, where the damage was sought for the drying up of springs of water alleged to have become dry because of mining and removal of coal by defendant under plaintiff's farm, the evidence showed that the springs began to dry about the time pillars under them were removed, that cracks appeared in the walls and concrete floors of the house above, that the blasting in the mine shook the house, loosened roof slates and rattled dishes. Mining engineers said they believed the loss of water was due to removal of the pillars by a general shattering of the overlying strata. A verdict for damages for drying of the springs because of mining operations was held justified by inferences fairly deducible from legal evidence and verdict for the plaintiff was held justified. The principle laid down in the case was that in order to establish

a causal connection between what is known as "pillar robbing" and the drying up of surface springs there must be some evidence that the effect of the former reached the surface, and the court says that such evidence was found in the testimony that the mining and blasting below the surface were followed by cracks in the walls and concrete floors of the plaintiff's farmhouse, the rattling of dishes in the cupboards, and the loosening of slate shingles on the roof, and that this constituted evidence that the defendant's mining had physical surface repercussions. These facts furnish as substantial proof that the surface was affected by the "pillar robbing" below as a mere subsidence of the surface a few inches would have done, and that if the mining of the pillars had the physical surface effects testified to, it is a legitimate inference that the cause of these effects was likewise the cause of the drying of the springs. In fact, a subterranean disturbance, resulting in a slight and uniform subsidence of the surface, without other effects thereon, would probably have had less effect on surface springs of water than the subterranean disturbance which resulted in the phenomena testified to. It was held that circumstantial evidence is legal evidence, and the court held that the plaintiff furnished sufficient legal evidence connecting defendant's pillar mining with the drying up of plaintiff's springs to warrant the submission of the case to the jury, citing Alwine v. Valley Smokeless Coal Co., 271 Pa. 571, 115 A. 882, and Weaver v. Berwind-White Coal Co., 216 Pa. 195, 65 A. 545.

See, also, Alabama Clay Prod. Co. v. Black, 215 Ala. 170, 110 So. 151, wherein it is held that the right to subjacent support of land is absolute, and it is no defense to an action to recover for injury to surface land that mining operations were conducted with due care or even in the most approved manner.

We are satisfied that the causal connection between mining operations and surface damage may be shown by circumstantial evidence, and that there was sufficient evidence in the case at bar to warrant the submission thereof to the jury on the question of causal connection. As a matter of fact, if, as is undisputed, the mine caved in, then there was certainly not sufficient support provided for the mine roof.

■ II. ' Defendant objects to instruction No. 3 given by the court. Such instruction directed the jury that in order to recover, the plaintiff must establish that the defendant, in the operation of its coal mine, removed coal from under plaintiffs' property; that the plaintiffs' property subsided; that the removal of the coal was the proximate cause of the subsidence of plaintiffs' property; that the subsidence of plaintiffs' property was the proximate cause of injury to plaintiffs' premises; and that plaintiffs have suffered permanent damages to their premises in some amount. We have discussed in division I the elements necessary to establish the causal connection between the mining and the injury to plaintiffs' property, which was undisputed. We see no error in this instruction, nor in instruction No. 5, which correctly defines and explains circumstantial evidence.

■ III. Defendant objects to the evidence of damage offered by the plaintiffs, and the admission of the same by the court, on the ground that there was no evidence as to whether or not the property was permanently injured. We do not agree that there was no such evidence. There were various witnesses who testified as to the condition of the house as not being level, that the floor had settled, that the corners of the exterior of the house had opened in settling, that the side walls had snapped apart and that it followed there was a settlement of the floor. Other witnesses were to the same effect. We think the jury would be justified, under the evidence introduced, in finding that there was permanent damage to the house and that it was not such damage as was repairable, so that the rule in regard to permanent injury to improvements on real estate would apply. Cases cited by defendant in regard to the measure of damage we do not think are applicable, as in Langham v. Chicago, R. I. & P. R. Co., 201 Iowa 897, 208 N. W. 356, where the injury was only to personal property, or in Grell v. Lumsden, 206 Iowa 166, 170, 220 N. W. 123, 125, where testimony showed that considerable earth and slate were removed and deposited on the surface in such a way as to destroy the use thereof for pasture or cultivation. The court, in that case, says:

"If, on the other hand, the slate and the other substance removed from the excavation and deposited upon the surface

were of such a character that it could not be readily removed, and such as to cause permanent injury thereto, the measure of damages would clearly be the difference in the value of the real property immediately before and immediately after the excavation was made.''

Holding, as we do, that there was sufficient evidence for the jury to find that there was permanent injury, the measure of damage submitted by the court was correct.

See, also, Collins v. Gleason Coal Co., 140 Iowa 114, 122, 115 N. W. 497, 499, 118 N. W. 36,. 18 L. R. A., N. S., 736. The court in that case says:

''The plaintiff's house on the land in question was damaged by the subsidence of the soil, and witnesses who testified as to the amount of damage thereto said they based their estimate partly on what it would cost to move the house and put a new foundation under it. The testimony complained of went no farther than to give the elements of damage on which they based their estimates, and, considered in connection with the instruction as to the measure of the plaintiff's damage, it could not have been prejudicial to the defendant.'' (Citing cases.)

The court says that from the instruction given, which the jury must have understood, any damage found must be based on an injury caused to the surface or the improvements, and that such damage could only be the difference between the value of the land at the times stated, but that in determining such difference, the damage to improvements might be considered; and the judgment was affirmed.

IV. Defendant next complains that the court submitted in instruction No. 3 plaintiffs' claim as to an alleged failure of the defendant to leave or provide sufficient support for the mine roof, which caused the cave-in of the mine, but that in said instruction the court failed to impose upon plaintiffs the burden of proof, and failed to require the jury to find any failure of defendant to provide sufficient support for its mine roof. In other words, that the statement of issues of the plaintiffs was not that which the court submitted to the jury, and therefore relieved the jury from the burden of finding that the plaintiffs had

proved their case as alleged, disregarding the question whether defendant had failed to leave or provide sufficient support for its mine and the question of whether such failure had caused the cave-in. We do not agree with the defendant in this contention.

The plaintiffs stated what, under the rule, the defendant was required to do, and that there was not sufficient support. The fact that the mine caved in, which is undisputed, is sufficient of itself to establish that there was not sufficient support for the roof. In the case of Peters v. Bellingham Coal Mines, supra, the owner's right to subjacent support is held to be absolute and persons who disturb subjacent supported surface are absolutely liable, regardless of negligence. See, also, Collins v. Gleason Coal Co., supra, holding that there is an implied covenant that in removing a mineral, the mining company will leave sufficient surface supports of some character so that no material injury will result to the dominant estate. In that case the petition was based on the theory of defendant's negligence, but the court held that, whether the removal of support be classed as negligence or something else, it cannot make any difference with the legal rights of the parties, since the owner of the surface has the right to necessary support of his land. We think the criticism of the instruction in relation to the pleadings is without merit.

■ Defendant further claims error on the ground of admission of evidence. The court permitted testimony of injury to near-by properties situated over the mine in question. That part of the mine which caved in was about a block in extent, and we see no reason why the court should not admit testimony as to the general effect of such subsidence, which was a part of the general effect of the cave-in and was properly admitted to show the extent thereof. This was not an attempt to show injury by failure of lateral support, and the court instructed the jury that the plaintiffs could not recover damages unless the jury found that the removal of the coal under plaintiffs' property by the defendant was the proximate cause of the subsidence of plaintiffs' property. And we also think there was no error in admitting evidence of the noise of blasting, if for no other reason than to show the mining operations going on in the vicinity of the plaintiffs' premises. It seems to us that this evidence was clearly admissible.

494

We have indicated the grounds upon which defendant claims error. We are satisfied that the case was properly presented in the instructions and that there was sufficient evidence under the allegations of the petition for submission to the jury, and that the judgment should therefore be affirmed.—Affirmed.

WENNERSTRUM, C. J., and SAGER, OLIVER, GARFIELD, BLISS, and STIGER, JJ., concur.