228 A.2d 114.

ADA V. D'AREZZO *vs.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY.

APRIL 4, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J.   This is a civil action brought by the widow of the insured, Enrico R. D'Arezzo, to recover benefits for accidental death pursuant to the terms of a policy issued by the defendant.   After a jury trial in the superior court, a verdict was returned for the defendant.   The plaintiff's subsequent motion for a new trial was denied by the trial justice, and she now prosecutes her appeal to this court.

It appears that the insured was a member of a group covered by a policy of insurance at the time of his death in 1963, wherein provisions were made for benefits for accidental death. The policy contained a limited coverage clause, so called, which limited the liability to instances in which the death resulted from accidental means, and an exclusionary clause, so called, which excepted from coverage death resulting from disease or infirmity. The pertinent portions of the policy establish liability for death which occurs "as a result of bodily injuries sustained solely through external, violent and accidental means, directly and independently of all other causes * * * provided, however that no payment shall be made for any loss caused wholly or partly, directly or indirectly, by (a) disease, or bodily or mental infirmity * * *."

It does not appear to be disputed that the deceased had suffered two heart attacks, so called, prior to his death in August 1963. The first of these occurred in December 1959 and was diagnosed as coronary thrombosis. On this occasion the deceased was hospitalized until January 1960. Again in November 1962 he was hospitalized for an attack diagnosed as a coronary insufficiency. From the time of the first of these attacks he was under the care of his personal physician, who subsequently testified at the trial of this cause.

On August 19, 1963 the insured was operating a small boat owned by him on a salt pond near the village of Wakefield. There was but one eyewitness to the events which surrounded the death of the insured. This witness, Mr. Barry Gallup, testified that late on that afternoon while he was working about his boat yard he heard a cry for help. He observed a small boat adrift near shore and a man partially in the boat and partially in the water. Mr. Gallup testified that the man's legs were over the stern of the boat with his feet in some manner entangled with the steering

cables, while the upper portion of his body was in the water partially submerged.

He went to the boat and succeeded in lifting the man from the water after disentangling his feet from the steering cables. He brought him to shore, where he began attempts at resuscitation. Some few minutes later the police arrived at the scene and continued attempts at resuscitation. However, these attempts were unsuccessful, death ensued, and the medical examiner who subsequently viewed the body attributed the probable cause of death to an attack of coronary thrombosis.

It is necessary, in our opinion, to pass upon the validity of certain of plaintiff's specifications of error before we can consider properly her principal claim of error, that the trial justice erred in denying her motion for a new trial, the verdict of the jury being contrary to the weight of the evidence. The plaintiff contends that the trial justice erred, first, in submitting to the jury two questions for special findings and, second, in overruling plaintiff's objection to the admission into evidence of testimony concerning the opinion of a medical witness as to the cause of the deceased's death.

In giving the case to the jury the trial justice, as requested by defendant, submitted two questions and directed them to make special findings thereon. The two questions submitted were, first, "What 'bodily injury' did decedent suffer?" The response of the jury was, "Coronary thrombosis." The second question submitted to the jury for special findings was, "What 'accidental means' caused the alleged bodily injury?" The jury responded, "None." In short, the jury found that the insured's death was not caused by accidental means and, therefore, the loss was not within the basic coverage of the policy, that is, that liability results only where the death is a "result of bodily injuries

**60**

sustained solely through external, violent and accidental means * * *."

The questions were submitted pursuant to Rule 49 (b) of the Rhode Island Rules of Civil Procedure of the Superior Court. The rule vests the trial justice with discretion to submit to the jury "written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict." This provision of the rule establishes the basic standard upon which the discretion of the court is to be exercised, that is, that the question proposed for submission relate to issues of fact that the jury must decide in order to reach a general verdict. In short, the rule requires the jury to disclose their specific findings as to ultimate facts. It is our opinion that the instant questions were submitted in compliance with the rule. The findings sought in each instance related to matters essential to establish that the loss was within the coverage of the policy. Obviously, these are ultimate facts and a proper subject for special findings under the rule.

We have some concern, however, with plaintiff's contention regarding the phrasing of the court's instruction as it relates to the second question submitted, that is, "What 'accidental means' caused the alleged bodily injury?" The court's general instruction as to what must be proved to establish liability on the part of the insurer was, in our opinion, adequate, sufficient, and without error. However, the court specifically instructed the jury with respect to the second question submitted that they were to disclose their findings as to what accidental means caused the injury and referred to this as an accidental "thing." The precise language of the court was: "* * * what accidental thing happened if any?"

As we understand plaintiff, she argues that in thus singularizing the "accidental means" requirement for coverage as a "thing," the trial justice misled and confused the jury

by causing them to look for some particular physical occurrence or mishap rather than, as she says in her brief, "to find the totality of the decedent's predicament as 'the accident.'" In thus singularizing the more comprehensive language of the policy provisions, the trial justice did not, in our opinion, confuse the jury to the prejudice of plaintiff.

While her argument might, in appropriate circumstances, have some persuasive force, we cannot say that in directing the jury's attention to a singular event the court precluded them from inferring from the evidence that decedent's predicament as described by the witness Gallup could have resulted from an untoward or unexpected event. In fact, the finding that the bodily injury was coronary thrombosis and that it did not result from an accident is clearly consistent with the general verdict and is persuasive that the jurors were not confused by the specific instruction accompanying the submission.

The real question is whether the language of the instruction was such that it would be understood by laymen possessing ordinary intelligence. In *State* v. *Reid,* 101 R. I. 363, 223 A.2d 444, we held that the proper test for determining how a charge would be interpreted by a jury is how it would be interpreted by such a jury "composed of ordinarily intelligent lay persons listening to it at the close of the trial." This being the test, we find inescapable the conclusion that the charge as given was not such as to mislead or confuse the jurors.

The plaintiff contends also that reversible error inhered in the overruling of her objections to the testimony of Dr. Thomas A. Nestor, who was also the medical examiner, concerning his opinion as to the cause of death. The plaintiff objected to the question: "Do you have an opinion, doctor, based on reasonable medical certainty as to whether or not this existing arteriosclerotic heart disease contributed in any way to the death of Mr. D'Arezzo?" The witness

answered in the affirmative and was then asked to state the basis of his opinion. The witness answered: "That arteriosclerotic coronary artery disease is a requisite, for all practical purposes, before one can have a coronary occlusion and in its presence, in the presence of coronary arteriosclerosis, one has the basic setup for coronary thrombosis." Subsequently the witness was asked: "I started to ask you, doctor, your statement is that without this pre-existing arteriosclerotic condition there could be no coronary thrombosis?" To this the witness replied: "If you recall my statement, it qualified that for practical purposes that is true, yes." At this point counsel for plaintiff conceded that the deceased "had a heart condition at the time of his death * * *."

The plaintiff charges error with respect to these rulings on two grounds: First, that the jury was misled and confused into believing that the deceased's arteriosclerosis was more than a mere condition upon which some other force acted to produce the death and was in fact itself a contributing cause of death, and, second, that the evidence was incompetent upon the issue of the cause of the deceased's death in that arteriosclerosis, while constituting a condition, from its very nature could not be causative of the death.

In our opinion plaintiff's contentions are without merit. The evidence adduced through these questions and answers was clearly relevant and material to the issue of whether the death resulted from "accidental means." One of the prime issues in the case is whether the coronary thrombosis, which concededly was the efficient cause of death in this case and which the jury found to constitute the bodily injury producing death, was a result of or was caused by some accidental means. In this circumstance we feel that opinion evidence properly could be given to the jury on the question of whether something that constitutes accidental

means within the meaning of the policy triggered the coronary thrombosis.

There is uncontradicted evidence in the record that the death here followed an attack of coronary thrombosis. It was the burden of plaintiff to establish that this attack was activated by some accidental means to bring the death within the coverage of the policy. In short, the question is whether the arteriosclerosis, considered as a latent condition, was acted upon by some event that would be within the meaning of the term "accidental means" as used in the policy. It is obvious from the special findings of the jury that it concluded that while the arteriosclerosis was a latent condition, the coronary attack was not activated by some circumstance or condition that could be described as accidental means but was spontaneously generated. We see no error in the admission of this evidence.

We turn to plaintiff's contention that the trial justice erred in denying her motion for a new trial. She argues in this court that the jury could not reasonably have returned a verdict for defendant as the basis of her contention of error. The question before us on the motion for new trial is whether the trial justice performed the duties made incumbent upon him by the motion for new trial and whether he was clearly wrong in sustaining the verdict of the jury. The plaintiff argues in her brief that the arteriosclerosis as a pre-existing condition is without pertinence on the question of liability unless it be established that it was in fact the efficient or moving cause of the decedent's death. This is to argue that evidence that the pre-existing arteriosclerosis contributed to the occurrence of the coronary thrombosis is without legal competence in this case because it has no probative force on the question of whether it constituted an efficient cause of decedent's death.

In our opinion, this is merely to restate the controlling issue upon which the jury rested their verdict, that is,

whether the death resulted from accidental means without regard to the pre-existing arteriosclerosis. An examination of the rescript of the trial justice on the motion for new trial is persuasive that he did not misconceive the effect of such evidence. That is to say that he did not sustain the verdict of the jury on the theory of pre-existing arteriosclerosis constituting a contributing cause which relieved the insurer of liability.

What plaintiff is arguing is that if the pre-existing arteriosclerosis were merely a contributing factor to the occurrence of the coronary thrombosis, this, standing alone, would not relieve the insurer under the terms of the instant policy of insurance. She refers to a number of authorities which apparently take the view that the existence of a pre-existing disease or infirmity will not relieve an insurer from liability under such a policy if an accident is the proximate cause of death and that in such cases recovery may be had even though the diseased condition appears to have contributed causally to the death if the chain of events that led directly to death were put into action or motion by some accidental means. This question of law is one which is not before us for decision in the circumstances of this case.

In our opinion, these arguments do not go to the issue raised by the motion for new trial. In the instant case the jury verdict was based upon an express finding that the bodily injury, the coronary thrombosis causative of death, was not a result of any accidental means and, therefore, plaintiff had failed to establish that the death of the decedent was within the scope of the policy. The only question before us is: Did the trial justice properly sustain the jury verdict on this issue?

The plaintiff contends, as we understand her, that the error of the court consisted in its failure to take an extremely limited view of the inferential potential of the evi-

dence adduced for the purpose of establishing the circumstances surrounding the decedent's immersion just prior to his death. It may well be that she is arguing that it is necessary to establish by absolute proof that the coronary thrombosis did not result from some accidental means in order to preclude liability on the policy. We cannot agree that absolute proof of such fact is necessary. In *Labbe* v. *Hill Brothers, Inc.*, 97 R. I. 269, 197 A.2d 305, relying upon the authority of a Pennsylvania case, *Hornick* v. *Bethlehem Mines Corp.*, 307 Pa. 264, we said: " 'If the administration of justice had to depend on demonstration by absolute proof, there would be few issues open to litigation, for such proof is rarely obtainable outside the realm of science. When a finding is a reasonable inference from the facts and conditions directly proved, it must be classed as legal evidence and not as a mere conjecture, surmise or guess.' "

In our opinion, the real test to be applied to the action of the trial justice here is whether the evidence establishing the circumstances surrounding the decedent's immersion is such that only one reasonable inference could be drawn therefrom, that being that the immersion was the result of accident. The plaintiff appears to argue that this was a necessary inference and that the evidence is not susceptible of a reasonable inference that the immersion of decedent resulted not from an accident but from a spontaneous onset of coronary thrombosis. With this we cannot agree. It is our opinion that the evidence is susceptible of a reasonable inference that decedent suffered from a coronary thrombosis while in the boat and that his immersion was not a result of accident but resulted from the thrombosis and that his death resulted directly therefrom.

However, the trial justice concluded that it was just such an inference upon which the jury based their finding that there had been no accidental means involved in the cause when they made the special finding. He recognized that

the drawing of this inference was for the jury in the first instance and that under our well-established rule that finding should not be disturbed merely because he would have made a contrary finding on the same evidence. See *Barbato* v. *Epstein*, 97 R. I. 191, 196 A.2d 836.

It may be that an inference that the immersion of the deceased resulted from accidental means in all the circumstances is as probable as an inference that the immersion resulted directly from the coronary attack, but, as we noted in *Labbe* v. *Hill Brothers, Inc., supra,* "the mere existence of contrary inferences in which probability inheres is not controlling on the acceptance by the trial justice of one of such inferences as probative of the fact in issue."

We are of the opinion then that the trial justice neither overlooked nor misconceived any material evidence and that in allowing the verdict of the jury to stand on the motion for new trial he properly recognized that it was within the province of the jury to draw such reasonable inferences from the evidence of the circumstances of the immersion and he did not err in his refusal to disturb the verdict on the ground that other and contrary reasonable inferences might be drawn therefrom.

The judgment appealed from is affirmed.

*Arcaro, Belilove & Kolodney, Abraham Belilove,* for plaintiff.

*Moakler, Sherlock & Geremia, John W. Moakler, John F. Sherlock,* for defendant.