**Jettie WARD, Executrix of the Estate of Drewie Ward, Deceased, Appellant,**

v.

**EASTERN COAL CORPORATION, Appellee.**

Court of Appeals of Kentucky.

Aug. 5, 1977.

Dan Jack Combs, Lawrence R. Webster, Pikeville, for appellant.

John M. Stephens, Stephens, Combs & Page, Pikeville, for appellee.

Before GANT, HAYES and LESTER, JJ.

GANT, Judge.

Appellant is the owner of a certain tract of land situated in Pike County, Kentucky, which was improved to the extent of a dwelling house, barn, canning house and chicken house. The evidence was that the appellant and her husband, prior to his death, had maintained a two-acre garden on the property, an orchard of some 12 trees and that they had a dependable well containing about 14 feet of water and a spring, together with other outbuildings. The appellee was engaged in the deep mining of coal in the area of the appellant's property and actually came somewhat closer to the buildings on the appellant's property than originally intended. The evidence further indicated that some six months prior to May 7, 1971, the appellant heard noises which appeared to her to be the sounds of blasting and the blasting shook the house at the time she was sitting there. About three weeks prior to May 7, 1971, the well suddenly went dry, causing the appellant to have to carry water from the spring. On the evening of May 5 there was apparently quite a rain which went on until Friday morning when appellant noticed water up above the house and, in her words, "the mountain had broke all the way in back of the barn, it was just a big dark crack there, and I went back in and woke my husband up and he got up and went out on the porch and when he went out on the porch the slide was coming on out and the apple trees were coming down the hill at the same time."

The testimony and exhibits indicated that there was a crack in the well foundation, a crack in the canning house, damage to the house, uprooting of trees, numerous cracks in the earth and landslides blocking the roads. Immediately after this incident, the spring dried up. The appellants' proof was further that as the appellee moved out of the mine it "split the pillars." This is a process by which pillars of coal which are left in the mine for support during the mining operation are partially removed as

the mining operation ceases. Maps were introduced showing the approximate size of the pillars left in the proximity of the appellants' property. In the instant case, however, no one had been in the mine for observation for several months prior to May of 1971.

The general appearance of the property of the appellee was not disputed. Two phrases were prevalent throughout the trial of this case. These phrases are "mountain breaks" which are generally defined as partings of the earth caused by the removal of subjacent support by mining; and "slide cracks" which are cracks in the earth caused by landslides which are the result of numerous things, one of which being an excessive amount of rainfall. All the witnesses for the appellants, being neighbors, friends and coal miners, said that the numerous openings in the earth were "mountain breaks." All the witnesses for the appellee, who were generally employees of the appellee, stated that these openings were "slide cracks."

At the conclusion of the appellants' evidence, the appellee made a motion for a directed verdict, upon which ruling was withheld and the case was submitted to the jury at the conclusion of all the evidence, the jury being unable to agree. Thereafter the trial court granted the motion of the appellee for a judgment n. o. v. and this appeal resulted. The sole question presented by this appeal is whether the trial court erred in removing this case from consideration by a subsequent jury.

The law with respect to a judgment notwithstanding the verdict is clearly set out in the case of *Commonwealth Department of Highways v. Enoch,* Ky., 523 S.W.2d 633 (1975) which states as follows: "The only ground on which a motion for judgment n. o. v. can be granted is that the movant asked for and was entitled to a directed verdict at the end of all the evidence."

This the appellee did, and thus we must examine the law applicable to a motion for directed verdict. That law is well stated in the case of *McCoy v. Carter,* Ky., 323 S.W.2d 210 (1959), as follows:

The question of proximate cause in connection with the occurrence . . . is one of fact to be left to the jury where such cause is open to a reasonable difference of opinion. Stated somewhat differently, the issue of proximate cause should be withheld from the jury *only* if there is no dispute about the essential facts and but one conclusion may reasonably be drawn from the evidence. (Citing cases.)

Appellees rely basically upon three cases in Kentucky, these being the cases of *Consolidation Coal Company v. Ramey,* 271 Ky. 48, 111 S.W.2d 438 (1937); *Fordson Coal Company v. Whitt,* 253 Ky. 484, 69 S.W.2d 992 (1934); and *Bogar v. Fordson Coal Co.,* 283 Ky. 594, 142 S.W.2d 143 (1940). However, each of these cases was distinguishable from the present case. In each of these cases, the coal company had gone into the mine both immediately before and subsequent to the action and had, by competent proof, proved that the roof of the mine was unbroken, that supports had not been withdrawn, that there were no cracks in the roof of the mine and that there was no subsidence whatsoever. This was not true in the instant case, in that the mine had been sealed pursuant to Federal regulation and no one had entered the mine for several months prior to May 7, 1971.

It is the opinion of this court that this case should have been submitted to the jury in light of the facts above stated and further in light of the statement attributed to the chief engineer of the appellee to the effect that "The mining started it and the water finished it." The law is well stated in W. Prosser, *Torts* § 41 (4th ed. 1971) as follows:

The defendant's conduct is a cause of the event if it was a material element and a substantial factor in bringing it about. Whether it was such a substantial factor is for the *jury* to determine, unless the issue is so clear that reasonable men could not differ.

For the reasons above stated, the judgment of the lower court is reversed and this cause is remanded for a new trial consistent herewith.

ALL CONCUR.